AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of Oregon

| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 3:23-mc-347 |
| A silver Apple iPhone as described in Attachment A | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

A silver Apple iPhone as described in Attachment A hereto,

located in the _____ District of _____ Oregon _____ , there is now concealed *(identify the person or describe the property to be seized)*:

The information and items set forth in Attachment B hereto.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
| --- | --- |
| 21 U.S.C. 841(a)(1) | Distribution and Possession with the Intent to Distribute a Controlled Substance, |
| 21 U.S.C. 846 | Conspiracy to Distribute and Possess with the Intent to Distribute a Controlled |
| 18 U.S.C. 924(c) | Substance, and Possession of a Firearm in Furtherance of Drug Trafficking |

The application is based on these facts:

See affidavit which is attached hereto and incorporated herein by this reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Chelsea S. Barker, Special Agent, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ Telephone at 5:11pm _____ *(specify reliable electronic means)*.

Date: _____4/24/2023_____

*Stacie F. Beckerman*
_____
*Judge's signature*

City and state:  Portland, Oregon

Hon. Stacie F. Beckerman, United States Magistrate Judge
*Printed name and title*

**ATTACHMENT A**

**Phone to Be Searched**
**(Device 1)**

A silver Apple iPhone inside a navy-blue case (hereafter referred to as "Device 1"), which was found on the front passenger seat of the white Mercedes Benz which THOMAS was preparing to operate prior to his detainment. Device 1 is currently in the custody of the Salem Police Department located at 333 Division Street NE, Salem, Oregon.  Device 1 is further identified and stored under Salem Police Department Case Number 22014378 evidence item #13.

**ATTACHMENT B**

**Items to Be Seized**

1.       All records of the Phone described in Attachments A that relate to violations of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. § 924(c) since January 1, 2022, including:

      a.       Photographs, videos, text conversations, voice recordings, and other evidence or communications related to co-conspirators in drug trafficking or other illegal activity, controlled substances, scales, packaging material, pay/owe sheets, drug records, customer lists, currency and other proceeds obtained by selling/distributing controlled substances, records and information regarding the distribution and possession with intent to distribute controlled substances, including contact information for controlled substances sources of supply, customers and associates, photographs, videos, voicemails and communications regarding the distribution of, or possession with intent to distribute, controlled substances.

      b.       Lists of customers and related identifying information.

      c.       Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions.

      d.       Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information).

      e.       All bank records, checks, credit card bills, account information, and other financial records.

///

///

**Attachment B**                                                                                                      **Page 1**

2.      Evidence of user attribution showing who used or owned the Phone at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.      Records evidencing the use of the Internet, including:

a.      Records of Internet Protocol addresses used.

b.      Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

c.      Records of data storage accounts and use of data storage accounts.

4.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

**Search Procedure**

5.      The examination of the Phone may require authorities to employ techniques, including imaging the Phone and computer-assisted scans and searches of the entire Phone that might expose many parts of the Phone to human inspection in order to determine whether it constitutes evidence as described by the warrant.

6.      The initial examination of the Phone will be performed within a reasonable amount of time not to exceed 120 days from the date of execution of the warrant.  If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court within the original 120-day period from the date of execution of the

**Attachment B**                                                                                          **Page 2**

warrant.  The government shall complete this review within 180 days of the date of execution of the warrant.  If the government needs additional time to complete this review, it may seek an extension of the time period from the Court.

7.      If, at the conclusion of the examination, law enforcement personnel determine that particular files or file folders on the Phone or images do not contain any data falling within the scope of the warrant, they will not search or examine those files or folders further without authorization from the Court.  Law enforcement personnel may continue to examine files or data falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the warrant, through the conclusion of the case.

8.      If an examination is conducted, and it is determined that the Phone does not contain any data falling within the ambit of the warrant, the government will return the Phone to its owner within a reasonable period of time following the search and will seal any image of the Phone, absent further authorization from the Court.

9.      If the Phone contains evidence, fruits, contraband, or is an instrumentality of a crime, the government may retain the Phone as evidence, fruits, contraband, or an instrumentality of a crime or to commence forfeiture proceedings against the Phone and/or the data contained therein.

10.      The government will retain a forensic image of the Phone for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory

**Attachment B**                                                                                  **Page 3**

evidence claims where, for example, a defendant claims that the government avoided its

obligations by destroying data or returning it to a third party.

DISTRICT OF OREGON, ss:          AFFIDAVIT OF CHELSEA S. BARKER

**Affidavit in Support of an Application
for a Search Warrant for a Phone**

I, Chelsea S. Barker, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since August 1, 2021.   My current assignment is to the Portland Field Office, Salem Resident Agency and I am part of the Marion County Violent Crime Task Force.   As a federal agent, I am authorized to investigate and make arrests for violations of federal law set forth in Titles 18 and 21 of the United States Code, and to apply for federal search warrants.   I graduated from the FBI Academy at Quantico, Virginia, after completing a 20-week course of instruction. I have acquired knowledge and information about criminal conduct and investigation from many sources, including formal and informal training, other law enforcement officers, investigators, persons whom I have interviewed, and my participation in investigations.   Through my training and experience, I have become familiar with the manner in which members of a criminal enterprise communicate and use electronic communications to store, transmit, and distribute information to one another and how they plan, organize, and carry out criminal activity.   I have investigated matters involving the sexual exploitation of children, illegal narcotics and related criminal activities, and other criminal acts.   As part of my duties as a federal agent, I work with local, state, and other federal agencies on joint investigations of federal offenses, to include those involving illegal narcotics and related criminal activities.

2.      I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search and examination of one

**Affidavit of Chelsea S. Barker**           **Page 1**

wireless telephones described below (hereinafter "Phones"), which are currently in law

enforcement custody at the Salem Police Department located at 333 Division Street NE, Salem,

Oregon, as described in Attachment A hereto, and the extraction of electronically stored

information from the Phone, as described in Attachment B hereto.   As set forth below, I have

probable cause to believe and do believe that the items set forth in Attachment B constitute

evidence, contraband, fruits, and instrumentalities of violations of Title 21 U.S.C. §§ 841(a)(1)

and 846, and Title 18 U.S.C. § 924(c).

### <u>IDENTIFICATION OF THE DEVICES TO BE EXAMINED</u>

3.      Device 1: A silver Apple iPhone inside a navy-blue case (hereafter referred to as

"Device 1"), which was found on the front passenger seat of the white Mercedes Benz which

THOMAS was preparing to operate prior to his detainment.   Device 1 is currently in the custody

of the Salem Police Department located at 333 Division Street NE, Salem, Oregon.   Device 1 is

further identified and stored under Salem Police Department Case Number 22014378 evidence

item #13 and identified in Attachment A.

4.      This affidavit is intended to show only that there is sufficient probable cause for

the requested warrant and does not set forth all of my knowledge about this matter.   The facts

set forth in this affidavit are based on my own personal knowledge, knowledge obtained from

other individuals during my participation in this investigation, including other law enforcement

officers, interviews of witnesses, a review of records related to this investigation,

communications with others who have knowledge of the events and circumstances described

herein, and information gained through my training and experience.

///

**Affidavit of Chelsea S. Barker**                                                                                      **Page  2**

**Applicable Law**

5.      Title 21, United States Code, Sections 841(a)(1) and 846 provides that it is unlawful to distribute and possess with the intent to distribute controlled substances, and to conspire to do so.   Title 18, United States Code, Section 924(c) provides that it is unlawful for someone to possess a firearm in furtherance of a drug trafficking crime.

**Statement of Probable Cause**

6.      In January of 2022, the Salem Office of the Drug Enforcement Administration (DEA) in conjunction with the Salem Police Department Strategic Investigations Unit (SIU) executed a federal search warrant on a vehicle and hotel room of an individual living in Salem, Oregon and seized a number of counterfeit Oxycodone pills. This individual has arrests for Fraudulent Use of a Credit Card, Unlawful Possession of Methamphetamine, Unlawful Delivery of Methamphetamine, Theft, Felony Elude, Hindering Prosecution, and Unlawful Delivery of Heroin.   The search warrants on the vehicle and hotel room were based upon probable cause that the individual was distributing counterfeit Oxycodone pills suspected to contain the controlled substance fentanyl.   After being taken into custody, the subject expressed interest in cooperating with law enforcement in exchange for potential consideration on future charges and/or sentencing decisions.   At this time, the subject of the initial investigation has become a "cooperating defendant" (hereafter referred to as "**CD**").   Detectives have been able to independently verify some of the information the CD has provided to law enforcement.   Based upon the information provided by the CD, I view the CD as reliable.

7.      In June of 2022, CD told Salem Police Department investigators, Phillip Thomas (hereafter identified as **THOMAS**) was operating a white Mercedes bearing Oregon license 108

**Affidavit of Chelsea S. Barker**                                                          **Page  3**

MXT.   CD also described THOMAS as a large source of supply for blue M 30 pills suspected of being manufactured with fentanyl.   In addition, CD told investigators, THOMAS was armed with a handgun and was in a relationship with a female named Jessica Berreth (BERRETH) who was associated with a black Chevy Equinox with yellow "POWER" license plate placard.

8.      Recently there has been a large increase of fraudulent oxycodone pills being manufactured and distributed within the United States.   These fraudulent pills are commonly blue in color and stamped with an "M" on one side and "30" on the other.   Additionally, these pills are being manufactured with fentanyl.

9.      Investigators with the Salem Police Department Strategic Investigations Unit (SIU) are familiar with THOMAS as some of them have had prior contact with THOMAS and knew he had a confirmed Oregon State Parole Board warrant.   SIU investigators also knew BERRETH had multiple warrants for her arrest.

10.      On June 29, 2022, CD informed SIU Investigators both the white Mercedes and the black Chevy Equinox were parked at the Best Western Plus Mill Creek Inn located at 3125 Ryan Drive Southeast, Salem, Marion County, Oregon.   Additionally, CD told investigators within the last 24 hours, CD observed THOMAS to be in possession of more than 500 blue M30 pills suspected of being manufactured with fentanyl and he was in possession of a quantity of powdered fentanyl.

11.      With the information outlined above, members of SIU set up surveillance within the parking lot of the Best Western Plus Mill Creek Inn located at 3125 Ryan Drive Southeast, Salem, Marion County, Oregon.

///

**Affidavit of Chelsea S. Barker**                                                    **Page  4**

12.     Upon arriving within the aforementioned parking lot, investigators observed both the white Mercedes bearing Oregon license 108 MXT and the black Chevy Equinox bearing a yellow "POWER" license plate placard parked within the lot.

13.     At approximately 5:35pm, Investigators observed both THOMAS and BERRETH exit the east door of the hotel and walk to the black Chevy Equinox and white Mercedes.   As both THOMAS and BERRETH exited the hotel, both were observed carrying property items such as bags and shoe boxes.

14.     Investigators said when THOMAS and BERRETH arrived at the vehicles, THOMAS placed the items he was carrying into the white Mercedes and BERRETH began to remove items from the black Chevy Equinox and place them into the trunk of the white Mercedes.

15.     Shortly after both THOMAS and BERRETH entered their respected vehicles, both were taken into custody on their outstanding warrants by members of the Salem Police Department.

16.     While taking THOMAS into custody, investigators found THOMAS to be in possession tactical light for a handgun and metal knuckles.   THOMAS is a convicted felon and his prohibited from possessing firearms and metal knuckles.   Investigators also located a small, clear green plastic baggie containing a white chalky substance, believed to be powdered fentanyl in his right front pants pocket.   This baggie weighed 6.5 grams (total weight with packaging). Inside THOMAS' left front pants pocket, investigators located a small, clear green plastic baggie containing a pink chalky substance, believed to be powdered fentanyl.   This baggie weighed 5.1 grams (total weight with packaging).

**Affidavit of Chelsea S. Barker**                                                                **Page  5**

17.    With the outlined information above, investigators applied for a search warrant through the Marion County Circuit Court for both the white Mercedes and the black Chevy Equinox.   During the execution of the search warrant, investigators found the following items within the white Mercedes:

- Approximately 243 grams of Methamphetamine,

- Approximately 108.5 grams of Heroin,

- Approximately 298.2 grams of blue M30 pills,

- Approximately 26.1 grams of suspected powder fentanyl,

- A Glock .40 cal. handgun,

- An RG Industries .25 cal. handgun,

- $164,126 in US currency, and

- A silver Apple iPhone inside a navy-blue case (Device 1) found on front passenger seat.

18.    I know that drug traffickers are increasingly selling little round blue counterfeit prescription pills that are manufactured with fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide), a Schedule II controlled substance.   These counterfeit pills are designed to replicate real 30 mg Oxycodone Hydrochloride pills, which are round, blue in color, and stamped with an "M" and "30" on them.   A typical M30 pill weighs around 1/10 of a gram (.1 gram).   Drug dealers regularly counterfeit these pills and, while attempting to replicate the round shape, the blue color, and the stamp of "M" and "30," they are instead manufacturing these pills with fentanyl as the active ingredient.   The counterfeit pills, while looking roughly similar to the real thing can often be distinguished based upon their appearance.   The counterfeit

**Affidavit of Chelsea S. Barker**                                                    **Page  6**

M30 pills often have a different shade of blue than the real thing and sometimes they are even manufactured in different colors, the edges of the pills and the stamped impressions are often rough and lack the precision of a real 30 mg oxycodone Hydrochloride pill, and sometimes the counterfeit pills will crumble easily under pressure.   I have seen and seized tens of thousands of these counterfeit M30 pills and lab reports have confirmed the presence of fentanyl within the samples sent for forensic analysis.   I know a user amount of a counterfeit M30 pill is often one pill, which can either be ingested or burned and inhaled.   I know some addicts will smoke up to 10 to 30 pills a day.   I know that a person possessing approximately 298.2 grams of suspected M30 fentanyl pills does not possess those pills for personal use but rather such a quantity indicates that they are possessed for purposes of further distribution.

19.    I know, based upon my training an experience, that heroin is typically used in quantities of one-tenth (.1) to one-quarter (.25) of a gram, either intravenously or smoked.   I know a gram of heroin on the street can sell for around $50.   Accordingly, I know that a person possessing approximately 108.5 grams of heroin does not possess it for personal use but rather such a quantity indicates that it is possessed for purposes of further distribution.

20.    I know, based upon my training and experience, that methamphetamine is typically used in quantities of approximately one-tenth (.1) of a gram, either intravenously or smoked.   Accordingly, I know that a person possessing approximately 243 grams of methamphetamine does not possess it for personal use but rather such a quantity indicates that it is possessed for purposes of further distribution.

21.    I know, from my training and experience, that firearms are "tools of the trade" for drug dealers and used in furtherance of their illegal drug dealing activities.   I know that drug

**Affidavit of Chelsea S. Barker**                                                                                      **Page  7**

dealing is a very dangerous business and that drug dealers regularly arm themselves with firearms to protect themselves, their drugs, and their profits, thus ensuring they can continue their drug dealing activities.

22.     On November 2, 2022, THOMAS was indicted in the United States District Court for the District of Oregon for Possession with the Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 841(a)(1); Possession with the Intent to Distribute Heroin, in violation of 21 U.S.C. § 841(a)(1); Possession with the Intent to Distribute Fentanyl, in violation of 21 U.S.C. § 841(a)(1); Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c); and, Felon in Possession of a Firearm, in violation of 18 U.S.C.§ 922(g)(1).

23.     Based on my training and experience and the knowledge obtained from other law enforcement officers, I know criminals involved in drug trafficking often try to conceal their methods of communication and their communication devices from law enforcement in order to use these devices to conduct their criminal activities without being caught.   One such method of concealing communication methods and devices is to use multiple different communication devices, often changing which one is used.   Based on my training and experience and the circumstances described herein, I believe **THOMAS** used the Phone to communicate and conduct illegal narcotic activity and that specific evidence, fruits, or instrumentalities of such illegal narcotic activity will be found on the Phone.

24.     In addition to the facts listed previously, I believe the facts and circumstances establish probable cause that the electronically stored information described in Attachment B is located on the devices described in Attachment A.

**Affidavit of Chelsea S. Barker**                                                      **Page  8**

25.     The Phone is currently in the lawful possession of the Salem Police Department located at 333 Division Street NE, Salem, Oregon.   Device 1 was seized by Salem PD investigators after they obtained a search warrant for **THOMAS'** white Mercedes.   In my training and experience, I know that the Phone has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as when the Phone first came into the possession of the Salem PD.

26.     Based on my training and experience, a wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.   These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.   A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.   In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.   These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; recording, storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the

///

///

///

**Affidavit of Chelsea S. Barker**                                                                    **Page  9**

Internet,[1] including the use of apps.[2]   Wireless telephones may also include a global positioning system ("GPS") technology for determining the location of the device.

27.      Based on my training, experience, and research, I know that the Phone has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, and GPS navigation device.   In my training and experience, examining data stored on wireless telephones can uncover, among other things, evidence that reveals or suggests who possessed or used the phone, how the phone was used, and the purpose of its use.

28.      As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant but also forensic evidence that establishes how the Phone was used, the purpose of its use, who used it, and when.   There is probable cause to believe that this forensic electronic evidence will be on the Phone because, based on my knowledge, training, and experience, I know:

a.      Phones can store information for long periods of time, including information viewed via the Internet.   Files or remnants of files can be recovered with forensic tools months or even years after they have been downloaded onto a phone, deleted, or viewed via the Internet.   Electronic files downloaded to a phone can be stored for years at little or no cost.   When a person "deletes" a file, the data contained in the file

---

[1]  The Internet is a global network of computers and other electronic devices that communicate with each other.   Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

[2]  Apps is an abbreviation for applications.   An app is a self-contained program or piece of software designed to fulfill a particular purpose.   An app can run on the Internet, on a computer, on a cell phone, or on other electronic devices.

**Affidavit of Chelsea S. Barker**                                      **Page  10**

does not actually disappear, rather that data remains on the phone until it is overwritten by new data.   Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the phone that is not currently being used by an active file—for long periods of time before they are overwritten.   In addition, the operating system may also keep a record of deleted data.

b.     Wholly apart from user-generated files, the Phone may contain electronic evidence of how it has been used, what it has been used for, and who has used it.   To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating systems or application operations, and file system data structures.

c.     Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

d.     Data on the Phone can provide evidence of a file that was once on the Phone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).   Systems can leave traces of information on the Phone that show what tasks and processes were recently active. Web browsers, email programs, and chat programs store configuration information on the Phone that can reveal information such as online nicknames and passwords.   Operating systems can record additional information, such as the attachment of peripherals, including SD cards or other flash media, and the times the Phones were in use.   File

///

**Affidavit of Chelsea S. Barker**                                      **Page  11**

systems can record information about the dates files were created and the sequence in which they were created.

e.    Forensic evidence on a device can also indicate who has used or controlled the device.   This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

f.    A person with appropriate familiarity with how the Phones work may, after examining this forensic evidence in its proper context, be able to draw conclusions about how the Phone was used, the purpose of its use, who used it, and when.

g.    The process of identifying the electronically stored information necessary to draw an accurate conclusion is a dynamic process.   Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on the Phones is evidence may depend on other information stored on the Phones and the application of knowledge about how Phones function.   Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

h.    Further, in order to find evidence of how the Phone was used, the purpose of its use, who used it, and when, the examiner may have to establish that a particular thing is not present on the Phone.

29.    I know that when an individual uses a wireless telephone to commit a crime such as to communicate about or arrange illegal drug trafficking, the phone will generally serve both as an instrumentality for committing the crime and as a storage medium for evidence of the crime.   From my training and experience, I believe that a phone used to commit a crime of this

**Affidavit of Chelsea S. Barker**                                                                                          **Page  12**

type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

30.    *Nature of examination*.    Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Phone consistent with the warrant.    The examination may require authorities to employ techniques, including imaging the Phone and computer-assisted scans and searches of the entire Phone that might expose many parts of the device to human inspection in order to determine whether it constitutes evidence as described by the warrant.

31.    The initial examination of the Phone will be performed within a reasonable amount of time not to exceed 120 days from the date of execution of the warrant.    If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court within the original 120-day period from the date of execution of the warrant.    The government shall complete this review within 180 days of the date of execution of the warrant.    If the government needs additional time to complete this review, it may seek an extension of the time period from the Court.

32.    If, at the conclusion of the examination, law enforcement personnel determine that particular files or file folders on the Phone or images do not contain any data falling within the scope of the warrant, they will not search or examine those files or folders further without authorization from the Court.    Law enforcement personnel may continue to examine files or data falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the warrant, through the conclusion of the case.

**Affidavit of Chelsea S. Barker**                                                                **Page  13**

33.     If an examination is conducted, and it is determined that the Phone does not contain any data falling within the ambit of the warrant, the government will return the Phone to its owner within a reasonable period of time following the search and will seal any image of the Phones, absent further authorization from the Court.

34.     If the Phone contains evidence, fruits, contraband, or is an instrumentality of the crime, the government may retain the Phone as evidence, fruits, contraband, or an instrumentality of a crime or to commence forfeiture proceedings against the Phone and/or the data contained therein.

35.     The government will retain a forensic image of the Phone for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

36.     *Manner of execution.*   Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.   Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## Conclusion

37.     Based on the foregoing, I have probable cause to believe, and I do believe, that the Phone described in Attachment A contains evidence, fruits, and instrumentalities of violations of Title 21 U.S.C. §§ 841(a)(1) and 846 and Title 18 U.S.C. § 924(c), as set forth in

Attachment B.   I therefore request that the Court issue a warrant authorizing a search of the Phone described in Attachment A for the items listed in Attachment B and the seizure and examination of any such items found.

38.      Prior to being submitted to the Court, this affidavit, the accompanying application, and the requested search warrant were all reviewed by Assistant United States Attorney (AUSA) Scott Kerin, and AUSA Kerin advised me that in his opinion, the affidavit and application are legally and factually sufficient to establish probable cause to support the issuance of the requested warrant.


/s/ By Phone_____
Chelsea S. Barker
Special Agent, FBI


Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 5:11 p.m. on April 24, 2023.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge

**Affidavit of Chelsea S. Barker**                                                    **Page  15**